We'll hear argument next this morning in Case 10-5443, Fowler v. United States. Mr. Crawford. Mr. Chief Justice, and may it please the Court, there is a significant disagreement between the Circuit Court over what the government must prove, beyond a reasonable doubt, to establish the violation of Title 18, United States Code, Section 1512a1c. This death-qualifying federal criminal statute must be construed clearly, consistently, and narrowly. Yet the Eleventh Circuit's opinion in this case conflicts with the rulings in factually similar cases from the Second Circuit, Lopez, and the Fifth Circuit, Causey, and other circuit precedent. More specifically— Are they all consistent? It would be our opinion they are all inconsistent, which is what we need from this Court, Your Honor. The Eleventh Circuit erred by placing the word possible in the statute and thus significantly modifying the plain language of the statute, and by proposing a standard of mere possibility. Mr. Crawford, what's your standard? Sometimes you say certain, sometimes you say likely, sometimes you say plausible. Which is your standard? Justice Kagan, we would offer the standard of realistic likelihood, which we cited in our brief on page 17 and page 41, as the appropriate standard in this particular case. That is language that comes from Lopez, the Second Circuit case, and also places a higher burden on the government, which we believe is important in order to maintain the Federal-State balance that is required in Federal criminal matters. It is a reasonable standard, more reasonable than what we would characterize the governor's — the government's standard of reasonable possible. In their brief, page 9, 10, and 13, they propose that, which we would add differs from what the Eleventh Circuit said. If you'll remember, in Lopez, the Eleventh Circuit offered the standard possible, and yet the government, backing away from that a bit, in their briefs on page 9, 10, and 13, used the phrase reasonably possible. And while we would concede it is an improvement on the Eleventh Circuit's mere possibility standard, it still is vague. It still upsets us. Alito, the statute speaks of the intent of the defendant. The defendant must intend to prevent the communication of information about a Federal offense or a possible Federal offense to a law enforcement officer who happens to be a Federal law enforcement officer. So it's all a matter of intent. Where do you get this question of whether it's possible or likely or certain or whatever that the information will eventually get to a Federal law enforcement officer? Isn't it simply what is in the mind of the defendant? We believe that subsection G of the statute precludes the or takes the mens rea element of the defendant off the table with respect to whether or not the person is a law enforcement official or whether or not there's an ongoing Federal criminal investigation. We would agree with you that the law does require that the defendant intend to prevent a communication. The Eleventh Circuit puts the word possible in there and says intent to prevent a possible communication. And that's the rub, Justice Alito, that we're asking this Court to address. Sotomayor, going back to Justice Alito's question, obviously, the statute is not written to say the intent to preclude a witness from talking to law enforcement officials. If it were that simple about a Federal crime, then it wouldn't matter whether it was likely, possible. All that we had to know is that the witness was – that the killing was intended to stop them from talking to law enforcement, period. So, clearly, G has to have a meaning different than merely stopping from someone talking to a law enforcement officer, because there has to be some connection to that officer being a Federal officer. So, going back to Justice Alito's question, how do you define the intent? What is the defendant's intent? If he doesn't have to know it's a Federal officer, what does he have to intend? We believe that you define or would determine the defendant's intent based on the circumstances and the totality of the circumstances. Articulate what the intent has to be. The intent would have to be a realistic likelihood that there's going to be communication. Sotomayor, does the defendant have to know that? That's my question. Does he have to intend to stop the witness from communicating this information to someone that's related to either a Federal judge or a Federal law enforcement? Yes, Your Honor. That is the gravamen of the offense. That intent element is essential. Let's say that. Scalia, what does that have to do with reasonable likelihood that it would occur? I mean, he either intends it or he doesn't intend it. The reasonable likelihood that this person who was killed – no, you said realistic likelihood is what you want. The realistic likelihood that this person who was killed might have gone to a Federal officer doesn't at all establish that the intent of the person who killed him was to prevent him from going to that officer, does it? I mean, it seems to me you have to stand on one stool or the other one. Either it relates to intent, as the statute says, or all there has to be is a reasonable likelihood that this person who was killed would have gone to a Federal official. Which is it? Well, it is our position that we are trying to determine, or the jury has to determine, a future act. The prevention of communication denotes the future tense of the word communicate. So what standard should we ask the jury to use in order to determine whether the government has provided evidence that there was going to be a future act prevented? And so it is. No, no, that's not what the statute says. It doesn't talk about preventing a future act. It doesn't say anyone who kills someone who would have gone to a Federal official is subject to this penalty. If that's what it said, your realistic likelihood test would be quite reasonable. But it doesn't say that. It says that the killing has to be with the intent of preventing him from going. The intent to prevent the communication, the communication in the future, is what is modified by the word prevent. And so that's what we're struggling with, Your Honor. We're trying to come up with a standard as to what the government can do. Kagan, do you think this is right, that the statute says that the person has to prevent the communication to a law enforcement officer? The statute also says that the law enforcement officer, in fact, has to be a Federal law enforcement officer. But because of subsection G, the statute does not require that the person intend the communication to be to a Federal law enforcement officer. And that's what we're struggling over, correct? That is correct, Your Honor. And in doing that, I mean, I guess my question to you is the same as my question to the government, which is where any of these standards come from. And I agree that the statute does not provide a lot of guidance, but how does one pick between a realistic likelihood or a possibility or a theoretical possibility or any of those things? We would urge the Court to pick a particular standard, if you're going to, to help us interpret this statute that would strike the appropriate balance between State and Federal criminal jurisdiction. Well, why don't we pick the standard that is set out in the text of the statute? Let me give you this example. Let's hypothesize a very cold, calculated, rational defendant who is planning a Federal crime, let's say the hijacking of an airplane over international waters. And this defendant finds out that his mother has learned about the plot. Now, he says, well, you know, I think there's a one-tenth of 1 percent chance that mom is going to go to the FBI and turn me in. But in order to prevent that, I'm going to kill her. I intend to kill her for the purpose of preventing her from going to the FBI, even though I think very, very, very unlikely she's going to do that. Hasn't that defendant violated this statute? We believe the jury would make that determination as to whether or not it was likely, realistically likely, that mom would report him to Federal law enforcement officials. That's what we're trying to do, is give the lower courts or the jury. Kennedy, I don't think Justice Alito can protect his own question, but I don't think you've answered it. You've put in realistic likelihood. He's asked you whether or not, as a matter of law, assuming that you're a juror and you read the statute and you were instructed by the words of the statute and you have Justice Alito's hypothetical, what result?  Is there liability under this statute, under Justice Alito's hypothetical? Then we would say yes, that the defendant could be found to have violated the statute under that particular hypothetical. And Justice Alito's next question, again, he can protect his own line of questioning, but what does that have to do with realistic likelihood? There's no realistic likelihood. There's only a half or 1 percent chance that the communication would be made. So that takes realistic likelihood off the table. And if it's off the table, you have to give us a different test. Well, then I would go with beyond a reasonable doubt that the government must prove in any criminal matter. That's what I wondered. You haven't really argued that, so maybe I'm missing something, and this question may be better for the other side. But this statute, as you go through it, has some elements. The first are facts about the world, killing people. The second has to do with intent, and then they talk about all these different things to stop him from going to a Federal officer. The third says no state of mind need be proved with respect to the fact he works for the Feds, so therefore it's not part of intent. Now, if it's a circumstance that is an element of the offense, and it is not part of the intent of the defendant, then isn't it an element, like all other elements, that you have to prove beyond a reasonable doubt? We would agree. You didn't argue it, so nobody has ever adopted this, so I feel I might be barking up the wrong tree. Now, I grant you, you're not the leaf on the tree that's going to give me the answer I need, which is why I'm wrong. But you've researched this, and you haven't really argued this point, so why not? Well, we understand. And we are assuming, of course, that all elements of the offense have to be proven beyond a reasonable doubt. What we've tried to do is provide the Court with some sort of standard that the jury could be instructed as to how to prove that fourth element, and that is this future communication. You think a realistic likelihood must be proven beyond a reasonable doubt? We do. You think a juror can grasp all of that in a juror's mind? You must find that there's a realistic likelihood beyond a reasonable doubt. We believe that given the proper instructions and definitions of the word realistic likelihood. Suppose the prosecutor argued realistic prospect there. When Gamble confessed, he confessed to the local police, and they immediately communicated that information to the Federal prosecutors. So if that's what the Government counsel argues, wouldn't that be realistic prospect? Wouldn't they likely have done the same thing with respect to Fowler that they did with respect to Gamble? Well, I would answer that two ways, Justice Ginsburg. Number one, that is not what happened in the case below. Once Mr. Gamble decided to, four years after the killing of Officer Horner, to talk to local law enforcement, it was not immediately reported to the Federal law enforcement officials. It was reported years later. So we don't have that immediacy. What was the time sequence? How much after Gamble came to the local police did the local police go to the? Officer Horner was found dead on March of 1998, and he came forward to the local police in 2002 after he was sentenced to 20 years on an unrelated State robbery. There was then several years before the U.S. Attorney's Office was contacted, and they decided to go forward with the case that is before us today. Several years after 2002? 2002 is when he came forward and began talking to law enforcement. Sotomayor, when did he go to the Federal authorities? After 2002. I'm sorry? When did they go to the Federal authorities after 2002? 2003, almost a year afterwards it was taken over there. What is your position on the subsequent element or feature about relating to the commission or possible commission of a Federal offense? Does the defendant have to know that his actions to prevent communication involve an underlying Federal offense? No, Your Honor. They do not. You basically take your offense as you find them, just as you take your officer as you find them. And we believe that's the important point. Why is that? 1512g2 talks about with respect to the law enforcement officer. Correct. I would have thought you'd say there's a negative implication that intent has to be This is a possible Federal crime. Well, we are willing to concede that there was a possible Federal crime that was occurring at the time of Officer Horner's death. Are you willing to concede that the defendant knew that? I'm willing to concede that the defendant need — it may not be proved that the defendant knew that. Now, if the government can establish evidence of that, we believe that goes to the defendant's intent and to a different element. But the government need not prove that, because we believe that subsection G takes that off the table. Alito, the issue here is the sufficiency of the evidence. So the question is whether a reasonable juror could adopt a certain view of the facts. Now, couldn't a reasonable juror in this situation take this view of the facts? Your client killed Officer Horner simply because your client didn't want to go to jail. He didn't particularly care whether he was going to be prosecuted in State court or Federal court. He just didn't want to go to jail. So his intent was to prevent the communication of information about the crimes that were being planned to any law enforcement officer who could send him to jail. And that would include a State officer. It also would include a Federal officer, and therefore, there's a violation of the statute. Now, what's wrong with that view of the facts? We believe, Your Honor, that if that is the reading of the statute, that that would basically Federalize murder, that there is always going to be some overlapping Federal crime that is possible, or the possible commission of, and if that becomes the standard or the reading or the interpretation of 1512, then every case is going to be allowed to be prosecuted. I would think your answer would be that if that were the law, A-1-C would have omitted the word Federal. I would agree. You said by any person to a law enforcement officer, and you would eliminate or judge of the United States, information related to commission or possible commission of a violation of the law. I would agree with you. The Congress saw or deemed fit to put the word Federal in there twice, both a Federal offense and a Federal official. Alito, I don't think that's what you're saying, Justice Alito, is that it's a Federal offense? No, because if there were, if the only crimes that were being planned were State offenses, then there would be no chance that, that the conveying of that information to a Federal law enforcement officer would send the person to jail. But the problem, Justice Alito, is that they're planning to hold up a convenience store. It's not a Federal offense, it's a State offense. So the person isn't going to go to jail on a Federal charge. I'm not so sure that holding up a convenience store would not qualify under the Hobbs Act or under some other Federal statute that created the law. Well, are you saying that there's no possible offense that's only a violation of State law and Federal law? There are, but there needs to be proof, there needs to be proof more than just the mere presence of a potential Federal offense. I believe in the Third Circuit opinion of Bell, which if I remember correctly, when you were serving on the Third Circuit, you authored that opinion, that you set up a standard that the Federal crime has to have additional appropriate evidence in order to have a violation under this statute. That's the problem we have with this case, is that we have Federal crimes. We'll concede that, the cocaine and the potential or conspiracy to rob a bank. But there is no additional appropriate evidence to meet the standard here. So using the opinion in Bell, we would ask this Court to find that. Kagan, Mr. Crawford, what would happen if you were dealing with a Federal offense that was a distinctly Federal offense, that really didn't have a State counterpart, like hijacking an airplane? Would that itself be sufficient to support a prosecution under this statute? Crawford, It would be — it would make the government's burden easier, because it is more likely than not, it is realistic likelihood that there's going to be Federal involvement, as Justice Scalia pointed out, on a case where it's a threat to kill the President or hijacking our income tax, Federal income tax. Kagan is that actually similar to this case, these guys were going to rob a bank, which I take it is mostly prosecuted by Federal officials? Crawford, Well, I wouldn't agree with that. Certainly not in the State of Florida. I would say that most State attorneys handle bank robberies as much, if not more, than the Federal authorities. But we would concede that bank robbery is a Federal crime. That's why we need something more than just Federal crime to confer jurisdiction. We need Federal law enforcement involvement, and we have nothing on this record that shows any involvement of Federal law enforcement. And that's why the case needs to be reversed. That's why the Eleventh Circuit's standard of mere possibility is too broad, and we're looking for a rule from this Court that will narrow that and keep that balance of Federal and State criminal jurisprudence where it needs to be. And quite frankly, if there's no other questions at this time. Sotomayor, I have one last one, the plain error question. Neither your brief yet. I think you're taking the position that simply because we granted cert, we've accepted there's a plain error? Is that your position? Because you haven't really defended against the finding of plain error. Crawford, Well, the trial lawyer did a poor job in articulating the reasons for the judgment of acquittal. Scalia, I take it you were not the trial lawyer. Crawford, Well, unfortunately, Judge, I was, so that's why you were not. I did a poor job of articulating at a judgment of acquittal time the reasons that the Court should grant it, and quite frankly, disservice to the district court judge. We need to help out more. But. Sotomayor, So we're really granted cert to give an advisory opinion? Crawford, No. Sotomayor, Because if there's not plain error, how do we reverse this Court below? Crawford, Well, we believe that when the argument was made at the Eleventh Circuit that whether there's sufficiency of the evidence issue was raised there, and the Eleventh Circuit chose not to rule on that, but chose to rule on a statutory construction of 1512, that then when this Court granted cert, that basically took that issue off the table. Sotomayor, So what you're suggesting is that we announce the standard, hopefully different than the Courts below, for your sake, and then remand to let the Court apply the new standard? Crawford, That is one possibility. Or to Sotomayor, And if it's not, what's the other? Crawford, The other is, is to overrule the Eleventh Circuit and, with instructions to enter a judgment of acquittal. Sotomayor, How could we do that unless we found there was plain error? And how can we say there's plain error when this question has vexed so many courts? Crawford, I don't know at this particular point. But I do know that we have a problem in the circuits that the standards being applied are across the board, and we need a bright line, hopefully a bright line rule, that will help us in the courts below so we can do our job. Sotomayor, I have to say to you that even if a bright line rule is announced, the real work begins in deciding what evidence is sufficient to meet that burden. Crawford, Understood. But it's our position that any of the rules that have been proposed, except maybe the mere possibility which is overbroad, there still is nothing on this record that is going to show a Federal law enforcement involvement or communication to Federal law enforcement, and we're going to win at any point. That is our fallback position on that. Breyer, anyway, you've made a fine argument here, if you didn't make it. Crawford, Thank you, sir. I'll do better next time. Roberts, Thank you, counsel. Thank you, Your Honor. Roberts, Ms. Harrington. Harrington, Mr. Chief Justice, and may it please the Court. When Congress enacted Section 1512a1c, it sought to protect the integrity of Federal criminal investigations and prosecutions. The statute requires the government to prove four things, an actus reus, a mens rea, and two Federal nexus elements, one of which is at issue in this case. The actus reus is murder. The mens rea that's common to every prosecution under Section 1512a1c is an intent to prevent the communication of information to a law enforcement officer. The first Federal nexus element requires that that information relate to the commission or possible commission of a Federal offense. And the second Federal nexus element, the one at issue in this case, requires that there's a reasonable possibility that the information would have been communicated to a Federal officer if the murder had not occurred. But where does that reasonable possibility standard come from, Ms. Harrington? Well, it comes from trying to construe all the different relevant provisions of the statute to make sense together. Section a1c specifies that a defendant has to have an intent to prevent a communication of the relevant information to a law enforcement officer. Section 1515 tells us that the law enforcement officer has to be a Federal law enforcement officer. That's the definitional section. And then Section 1512g2 specifies that the government doesn't need to prove any state of mind about the fact that the officer is a Federal officer. Well, let me give you a hypothetical similar to the one that I gave your friend. Two men are sitting on a park bench planning the commission of a Federal crime, hijacking of an airplane. And they think they're by themselves, so they're talking about this. And then after they've had a discussion, they turn around and they see there's somebody standing very close by. And so they say, we have to kill this person to prevent him from going to the FBI. And so they do. And they're prosecuted under this statute. But then at trial, they bring out evidence that the person didn't speak a word of English, only spoke Russian. So there wasn't any possibility whatsoever that this person was going to report that to the FBI or any law enforcement officer. A violation of this statute or not? Yes. In our view, there are two different ways to prove a violation of this statute. One is, if you just read Section A1c, a natural reading of that section is that if a defendant has a specific intent to prevent a communication to a Federal officer specifically, then that's a violation of the statute. What Subsection g2 tells us is that you don't need to prove a Federal officer's specific intent for every violation of the statute. But if you can prove that, then that's enough. And so in this case, there's no evidence that the Petitioner had a specific intent as to a Federal officer. But, for example, if Officer Horner had said, hey, I'm the FBI, or, hey, I'm calling the FBI right now, and then he had killed him, that would have been enough whether it was true or not. Alito So the realistic possibility relates only to the question of whether it would have been conveyed to a Federal officer as opposed to some other law enforcement officer. Yes, that's right. And in Section g2, it's described as a circumstance, that the Federal, that the officer in question is a Federal officer. And so that's a fact in the world that the jury needs to make a determination about. Of course, it's a fact in the world about the fact that the defendant has a specific intent to prevent a communication to a Federal officer specifically, then that's   officer in question is a Federal officer. And so that's a fact in the world that the jury needs to make a decision about   And so that's a fact in the world that the jury needs to make a reasonable prediction about what could have happened in the absence of the murder. Kennedy What do you see as the difference? Kennedy Suppose, in Justice Alito's hypothetical, two guys on the park bench, they said, and they found out that the man with the gray coat behind them was listening. They said, we have to get the man with the gray coat. They turn around, they shoot a man with a gray coat, but it's a different man. Kennedy What result? It wasn't the man that was listening. They got the wrong guy. The intent was there. So they said, we have to shoot this guy to keep him from talking to the FBI. That's still a violation of the statute because they have the requisite intent as to a Federal officer. Kennedy But then your realistic possibility, the realistic probability standard falls out of your test. Well, just to be clear, the realistic possibility part only comes in where the defendant doesn't have a specific intent as to the Federal officer specifically. So in Justice Alito's hypothetical, the intent was to prevent a communication to the FBI in particular. And if a defendant has that specific Federal officer specific intent, it doesn't matter whether it might have happened, would have happened, could have happened. Where the reasonable possibility standard comes in is in cases like this one, where the defendant has an intent to prevent a communication to a law enforcement officer for sure, but doesn't have any specific intent as to the Federal nature. Kennedy I think it's very difficult to instruct the jury to say, now, sometimes there's a realistic probability, sometimes there isn't. I just don't know what this jury instruction is going to look like. Harrington Well, I think the jury instruction would say, you know, you need to make a determination about what could have happened if the murder hadn't occurred. And if you find that there's a reasonable possibility that there would have been a communication with the Federal officer, and that can be proved in any number of different ways in any particular case, then you find that there's a violation of the statute. Kennedy Why do you need that? I mean, why? We're always talking here about murders of a witness, right? Harrington Yes. Scalia So you're always talking about a murder that was intended to remove somebody who could incriminate the killer for some other crime. Why isn't it enough to say you killed that person to prevent the disclosure of the crime? And if the crime was a Federal crime, the disclosure you were preventing was a disclosure to a Federal court or to a Federal police officer. Why do you have to create a reasonable likelihood that this person, this particular person would have gone to a Federal officer rather than a State officer? Isn't it enough that you killed the person to prevent disclosure of the crime and that the crime was a Federal crime? Why isn't that the test? Harrington Well, I think that's an interpretation of the statute the government could live with. But the effect of that is that the government could more than live with it. The government could wallow in it. Kagan But that indeed, that is a more aggressive reading than the reading we're offering because Congress went to the extra step of defining law enforcement officer to mean Federal law enforcement officer. So the interpretation you're positing would essentially read that out of the statute. Scalia No, but the statute reads it out of the statute. It says in G that you don't the intent element does not require that you know it's a Federal officer or that you know it's a Federal judicial proceeding. Why isn't it enough that you kill somebody to prevent the disclosure of a crime that's a Federal crime? Harrington I mean, Congress could have written the statute that way, but when Congress defined law enforcement officer to mean Federal law enforcement officer, presumably they meant that to mean something. And in G-2, what they do is they take the Federal nature of the law enforcement officer out of the mens rea part of the offense, but they describe it as a circumstance, and so that presumably is a – has to relate to something that could have happened in the world in the absence of the murder. Roberts If you have a Federal, underlinked Federal offense, and I gather you don't think that, that just needs to be shown as a matter of fact, right, no intent with respect to that, isn't it always likely that there's going to be a reasonable possibility, reasonable likelihood, that the communication is going to go to a Federal officer? It's a Federal offense. The communication covers Federal judges. That's the person who's going to try the case in every case. Harrington Except that not all crimes that could be prosecuted as Federal crimes are prosecuted as Federal crimes. For example, there are – most drug crimes are prosecuted by State authorities rather than by Federal authorities. Roberts Well, obviously not all of them. Harrington Not all of them. Roberts So you think that that's not an element of the crime, but that feature of the prosecution depends upon what percentage of the crimes are prosecuted Federally as opposed to by State law? Harrington No, it doesn't. And I think in a particular case, if the drug crime is the underlying crime, that could serve as the predicate crime. But I think what matters is what the jury has a reason to conclude. And jurors generally don't understand the way that the Federal system works vis-a-vis the State system. And so if there's no reason for the jury to think that the information might have gone to Federal officers, then they wouldn't have a basis for a conviction under this statute. Roberts Can you instruct the jury that the underlying crime here is a Federal crime, and then say the only thing they have to determine under such standard is whether or not the communication would be to a Federal officer? Harrington You could give that instruction, but I think – I took the hypothetical from Justice Scalia to be that you wouldn't need to show that there's any chance that the communication would have gone to a Federal officer. And I think that would read the Federal officer definition out of the statute. If all that was required was that the offense be a Federal offense, and then you could just say, well, you know, in theory – and it's true that anybody who has information about a commission of a Federal offense, theoretically, could someday choose to give that information to a Federal officer. But that – Alito Let's say the case, that this case arises, exactly this case arises in two different adjacent jurisdictions. In one, the local sheriff and the local district attorney hate the Feds. They never talk to them unless they absolutely have to. And so if Officer Horner had taken the information that he learned to the local sheriff, there's no chance whatsoever that they would have referred that over to the FBI or the U.S. Attorney for prosecution in Federal court. So no realistic possibility there. In the other jurisdiction right next door, the local sheriff and the local DA don't want to be bothered with bank robbery trials. They send all of those over to the FBI and the U.S. Attorney. So there's a very high probability the information would have gotten to the Federal authorities. Now, would this case come out differently, depending on the jurisdiction? I think it would, Justice Alito. I think in the first case, the jury wouldn't have a reasonable basis to conclude that the information might have gone to Federal officers in the absence of the murder. In the second case, they would have a very reasonable basis to make that inference. Kennedy, I don't see what that has to do with the defendant's intent. It doesn't have anything to do with the defendant's intent. Again, there are two different ways in our view to prove a violation of the statute. One is if the defendant has a specific intent about preventing communication to a specifically Federal officer. If the Federal nature of the officer is in his mind, that's one way to prove a violation of the statute. If he doesn't have that specific intent, which is going to be most cases, honestly, that are prosecuted under this statute, then you have to prove that there's some reasonable possibility that that communication would have happened. Kennedy, where do we get this? Kennedy, but then you have to change your answer, maybe you don't, to make a hypothetical where they shoot the wrong man. But in your hypothetical, which I think you barred from Justice Alito, there was a specific intent to prevent a communication with the FBI. And so there they had the Federal officer's specific intent. Scalia, isn't it a rather strange trial? It's such a weird issue to submit to the jury in a criminal trial. You know, whether this witness who was killed, whether there's a reasonable likelihood that this person who was killed would have gone to a Federal law enforcement authority rather than a State law enforcement authority. But the reason it's weird is because the design of the defendant in killing the victim is to prevent something from happening. And then the jury is asked to make a determination of whether that thing might have happened or not. And so you don't – if you place too high a burden on the government, you're basically giving a defendant who acts efficiently and early in the criminal process a leg up. Because you're – if you require the government to prove that it's more likely than not that the communication in question would have happened with the Federal officer, then what you're doing is you're not giving sufficient protection to those communications to Federal officers that would cause a Federal investigation to be initiated, right? You're – it's not how you're doing it. Sotomayore, I'm a little bit confused. Tell me exactly why you see a difference between realistically likely or reasonably possible. Tell me – tell me what fine line exists between those two and what quantum of evidence more you would need under one as opposed to the other. Well, I guess what we see – where we see the sort of the ballpark is either the government needs to prove that it's more likely than not that it would have happened or they just need to prove that it's a reasonable possibility. And so we would opt for the second of those two options. You could just – you could just – Tell me what the difference in proof would look like. The difference in proof, it – I mean, it depends on the particular case, right? In many of the cases that are actually prosecuted under the statute, there's already a Federal investigation underway. And in those cases, this element is easy to prove, yes. Okay. So the cases that are at issue are cases like this, where the murder happens almost contemporaneously with the Federal criminal activity. And in those cases, nobody's had a chance to even think about initiating an investigation. And so – but those initial communications are vital to protecting the Federal interest in protecting the integrity of Federal investigations. Sotomayor, you still had to prove, didn't you, or wouldn't you have a measure of obligation to have a witness get up on the stand and say, the FBI always looks at bank robberies? I mean, in the absence of that, aren't we asking the jury to speculate that merely because it can be a Federal crime, bank robbery can be both a State and a Federal, that it's reasonably possible it would go? Not everything you yourself said, not everything goes to the Federal government. So – Right. And again, if I – I would like to try to separate. There's the question of what is the element of the crime, how do we define it, and then what is the evidence you would introduce to satisfy that element. In this case, certainly the government could have introduced evidence that local law enforcement officers report all evidence of bank robberies to the FBI. That would have been enough. They didn't introduce that evidence. What they introduced instead was that when local law enforcement officers later got the information through other sources, they then shared the information with Federal officers. If they hadn't proven that, our contention is it wouldn't – the evidence would not have been sufficient to sustain the conviction. We say it's not. Scalia, we've gotten along for over 200 years without this particular Federal law, and I, therefore, am not inclined to give it a sweeping, broad interpretation. And I think it's so weird to submit to the jury, you know, how likely is it that this dead person would have gone to a Federal law enforcement officer rather than a State law enforcement officer, why isn't an entirely satisfactory reading of this statute the following? That if you – if, indeed, you have in mind specifically the FBI or a Federal proceeding, you're done. If, however, you don't have in mind specifically a Federal proceeding, but you have in mind a particular proceeding, which is a Federal proceeding, or a particular officer who is a Federal officer, then you're done. But anything else isn't covered. So the intent has to be the intent to stop a particular proceeding or to stop the person going to a particular officer. If that proceeding is Federal or if that officer is Federal, you have the defendant. But otherwise, the laws that we've lived under for 210 years will continue to apply, and this new Federal statute will not apply. Well, Justice Scalia, I think it would be insufficiently protective of the Federal interest to say that you could only – that you would look at what the defendant had in mind about what the chain of communication might be if he didn't murder the person who was witnessing the crime. Most defendants don't think, well, you know, if Officer Horner is going to call the dispatch, the dispatch is going to call, you know, the other person in the Payne City Police Department. They're going to call the sheriff. They're going to call the Federal law enforcement officers. Most defendants wouldn't be thinking down that – sort of down the chain of communication that way. But the statute criminalizes killing someone to prevent the communication – not a communication, not a particular communication, but the communication by any person of information relating to the commission of a Federal crime. Scalia I suspect that what this is mainly addressed to is killing witnesses, which has become very common in some jurisdictions, witnesses in criminal trials. And you know darn well what trial is involved. It's a trial that's already underway, and if it's a Federal trial and you kill the witness, you're liable under this statute. What is covered beyond that is if you know that the information is going to be given to a Federal officer, then they have you also. But I don't know why we should read the statute any more broadly than that and have these weird questions submitted to the jury, how likely was it that this dead person would have gone to a Federal officer rather than a State officer, and inquire into the question that Justice Alito asked, you know, how – is there a friendly relationship between State and local officials so that the State official would – I don't want to get into that, and I don't think the jurors do. I mean, many of these things are not – in many of these cases, this is not an element that's difficult to prove. If, as you say, it's a witness in a particular investigation or who's going to testify in a particular trial who's been murdered, then it's easy to prove that the Federal officer nexus has been satisfied. But Congress is also trying to protect information that would cause Federal investigations to be initiated. Those are important communications. If you allow murders of people who witness crimes where the – in order to prevent them from reporting that information to law enforcement officers, where the reporting of that information would have caused a Federal investigation to be initiated, then you're insufficiently protecting the Federal interest in prosecuting Federal crimes. Kagan, what would be – what would happen if, instead of Officer Horner, the custodian of the cemetery had come across these people and the exact same thing has happened? Would you then say that there would be – that there would be a prosecution? There could be a prosecution under this statute? Not unless the custodian of the cemetery was on his cell phone saying, I'm calling 911. Right? So if we – what's important is that… So is that the difference, is that Officer Horner was on his cell phone? Well, in terms of whether the evidence that was presented in this case was sufficient, it was sufficient because the jury knew two things. They knew, first, that Officer Horner definitely would have communicated the information that's relevant in the case to local law enforcement officers. And second, they knew that when local law enforcement officers later acquired that information from other sources, they shared it with Federal officers. So if you didn't know the first step, if you didn't know that definitely the person who was killed would have communicated with local law enforcement officers, then there wouldn't be a reason – first of all, you might not have the correct specific intent to prevent communication with a law enforcement officer, which is required. I do have one question I'd like to ask at some point. Are you finished? Yes. Go ahead. Because this is very interesting. I normally think purpose is important. In this one, I don't. And just – now, suppose I'm right. Purpose has nothing to do with this. What the problem here is with the words intent and prevent. Yes. And it's how they're used in ordinary English. So let me give you an example, even odder than Justice Alito's, but I think it illustrates the point, the question. Imagine you put your son in his room and they say, why did you keep your son in his homework? Because I wanted to prevent him from going to the movies. That's why. Now, when you say that, we would impute, correctly, you wanted to prevent him from going to a Hollywood movie. You wanted to prevent him from going to an old movie. Prevent him from going to a new movie. But prevent him from going to a Lithuanian movie? Now, why does that sound so odd? Because there's no realistic possibility that he would go to a Lithuanian movie. Okay. Now, if that's the problem, if that's the problem, the words that capture that problem are their words. Realistic likelihood, not the words possibility. So if I have to choose between those two and that is the problem, why don't I choose their solution? Well, I guess in our view, it's less important which words you pick than it is what they mean. And so if by realistic possibility or realistic likelihood. Breyer. But did they use a realistic likelihood? And if someone were to tell me in my odd example, there is no realistic likelihood he would go to a Lithuanian movie, that seems to describe perfectly whether I would or would not say in trying to prevent him from going to the movies, you try to prevent him from going to a Lithuanian movie. And yours doesn't quite. I mean, it's a, I agree, it may not make that much of a difference, but we have to choose some form of words. Scalia. I understand this. You mean it would have been okay if he went to a Lithuanian movie? Breyer. No, it wouldn't have been okay. But you don't normally say of a person when a thing is really weird, but he wants it to happen, but doesn't do it for that, you know, it's so unlike, I shoot an arrow into the air hoping it will fall on my enemy, all right, it's not going to. But if it does, we say he intended it. You see, that's the kind of linguistic problem that I think is present. Right. And it's not a, it doesn't perfectly map onto the problem in this case, of course, because there is subsection G-2, which specifically says you take intent out of the equation. And so I'll concede it's an awkwardly constructed statutory provision, but I think the important point is. Well, it's not awkwardly constructed. It's trying to get odd possibilities, and if it is trying to get those odd possibilities, about which we normally would say he did intend to prevent that from happening, then those things we're trying to leave out are those where there is no realistic possibility that they would happen. I would agree with that. And so what we'd like to say is, well, again, it depends what you mean by realistic possibility or likelihood. If you mean more likely than not, then we would say that's too high a burden on the government. We want to cover odd possibilities, but not outlandish possibilities. Sotomayor, I'm not sure I understand your answer to Justice Kagan's hypothetical. We, we, there's no proof that this particular officer who was shot was going to pick up the phone to the FBI. He may have overheard this. He would have called his fellow officers and somebody, probably his supervisor or the DA's office, was going to make the decision whether to call the FBI. So how is that different from the cemetery caretaker, who's going to call it in probably to 911, and he doesn't particularly have an idea of who's going to get involved or not, because it's really not his issue? Why is there a difference between those two situations? And isn't the question, going back to what Justice Breyer asked, was what's the likelihood that this is going to get investigated by the Federal government? Why is it reasonably possible? Anything is reasonably possible, or almost anything. Well, I mean, we, we attach the word reasonably to possible to sort of to wall off cases that are theoretically possible, right? So, again, we would like to cover odd occurrences, but not outlandish occurrences. So it's not just anything that's possible. It's the jury has to have a reason to think it might have happened in this case. Sotomayor, I guess then your burden is only to show that it's a Federal offense. Because why do you need to show anything else? Because reasonably possible encompasses every single Federal offense or anything that could be termed a Federal offense. With respect, Your Honor, we don't think that's correct. I think there needs to be a reason for the jury to think that if this communication had not been prevented, the information eventually would have gone to Federal    And I think that's the reason why we're dealing with the Federal offense. Because the reality is that not information, that not all local law enforcement officers share every piece of information about Federal offenses with. No, but there's a possibility. There's a possibility, but I think. There's a possibility. And again, that's, if that's how the Court wanted to go, that's something that the government could live with. But, no. Did you say before that, that you're presenting this to the jury and everybody is worried about what the jury will think, that when Gamble came and confessed, the local official went to the Federal. I think we were told that there was a year lapse between when the local police knew about Gamble's confession and when. Well, there's a 10-month lapse between when Gamble went to the local law enforcement officers and when Gamble testified before the Federal grand jury. So, presumably, the Federal, the AUSA was brought in sometime in that 10-month period. So it wasn't that long a lapse. Do you know what the difference was between the State and the Federal penalties? I don't know the difference. I mean, Gamble, when he was, he was indicted eventually for 14 Federal offenses to which he pled guilty and was sentenced initially to life plus 170 years. Some of the, some of the crimes for which he was indicted could not have been prosecuted in State court. But presumably, he could have gotten a life sentence for murdering a police officer if he'd been prosecuted in State court as well. So, Ms. Harrington, suppose Officer Horner had come to the scene and instead of seeing evidence that there was a robbery about to occur, had seen evidence only of drug use. Now, that might be a Federal offense, but typically, it wouldn't be prosecuted in Federal court. Would you say then that the statute is not satisfied? No. We would say it is satisfied if everything else was the same. Because? Because it's still information relating to the commission or possible commission of a Federal offense. We still know that Officer Horner definitely would have transmitted that information to local law enforcement officers. And we still know that when local law enforcement officers later got the information, they transmitted it to Federal. No, but that was four years later. That was way past the time when this incident occurred. It's true. And just to be clear, we're not saying that that communication that happened in 2002 is the communication that was prevented or intended to be prevented. What we're saying is that the fact that when local cops got the information in 2002, they shared it with Federal officers, that that's a reason for the jury to infer that they would have done the same thing if they had gotten the information. Kagan, do you think the fact that they got this information four years later, shared it with law enforcement officers after they knew that a murder had occurred as a result of the incident would be the same kind of inquiry that they would make at that time before the murder? Of course, we don't know what would have happened because Officer Horner was murdered to prevent any of this from happening. But, in fact, the evidence before the jury suggested that it wasn't the murder that motivated them to share the information with Federal officers. It was one of the underlying robberies. It was the robbery of the Holiday Inn, which was a Federal offense. The statute of limitations had run on that in State court, and so they wanted to – but they wanted to maximize the amount of charges they could bring against Chris Gamble until they decided to share that information with Federal officers. So it wasn't the murder that made the difference. It was one of the underlying Federal offenses that was charged against – as one of the predicate crimes against Petitioner here. Scalia, would you not acknowledge that the statute is vague enough that the intent which it requires could mean either the intent to prevent testimony from giving in a particular Federal proceeding or to a particular Federal officer, or the specific intent to withhold it from a proceeding or an officer who happens to be, or which happens to be, Federal, but which the defendant is not aware is Federal? It could bear that meaning, couldn't it? It could. But, Justice Scalia, I want to point out that subsections big A and big B of little A-1, those are the provisions that talk about official proceedings. Subsection A-1C, which is the provision that's at issue here, does not talk about official proceedings. It talks about transferring information to Federal – to law enforcement officers or to judges. And so there doesn't, I think, by just by reading a – just sort of a plain reading of those provisions together means that for subsection C, you don't need to have an official proceeding that was in anyone's mind or that was underway at the time. Scalia, I acknowledge that, but a particular judge or the conduct of a Federal It could. It could require specific intent of a proceeding or a judge or an officer which happens to be a Federal officer. It could, yes. And, again, I think if the defendant has a Federal officer-specific intent in mind when he commits the murder, that's enough. So if the defendant has in mind a particular officer, then there's a potential violation of the statute. But if the defendant just kills for the purpose of preventing this from going to any Federal – any officer who might happen to be a Federal officer, then there's no violation under this reading of the statute. No, there is violation if there's a reasonable possibility. But under the interpretation that's been suggested to you, that would be the distinction? I'm not – I don't mean to give that away. I think this is a case where there's not a specific Federal officer intent. I may have misunderstood the question as it was put to me. If there's no specific Federal officer intent, but you can prove that there's a reasonable possibility that one of the communications prevented by the murderer would have been with a Federal officer. I think the question was if you're going to use this statute. It's unfair for him to ask you what my hypothetical was. I think the answer is yes. Yes. Thank you, counsel. Mr. Crawford, you have 7 minutes remaining. Justice Kagan, if I could go to a question that you posed. If this Court were to find that the mere presence of a possible Federal offense was appropriate to give Federal jurisdiction under this particular statute, then I would ask the Court to consider the effect that that would have on criminal practice throughout this country. There is significant overlap between Federal and State criminal laws. And if we are simply going to confer Federal jurisdiction on this particular statute because of the mere possibility of a Federal offense, you have created a huge exception, and we would respectfully submit, create problems for that delicate balance between State and Federal jurisdiction. What's delicate about robbery? I mean, robbery is clearly a Federal crime. And that was what the — that was what Horner observed. Didn't he? They were planning for the robbery the next day? Justice Ginsburg, we would agree that bank robbery is a Federal crime. The question is, is there any evidence in the record that would show there was going to be any Federal involvement in that Federal crime? All — every day, Federal crimes are prosecuted in the State system under their State crimes. But absent some Federal involvement, you have obliterated that line between State and Federal criminal practice, and that is too broad, or that, we believe, upsets this delicate balance that we must maintain. If I could, I want to go to Lithuania and suggest this. I'm slightly regretting bringing up that. There have been a number of cases cited at the circuit court level that give examples of how the government can meet their proof, and quite frankly, it's not difficult. In Romero, there is a Federal — ongoing Federal law enforcement investigation going on. So if there is an ongoing Lithuanian movie or whatever. You agree, basically, on the point. I think that where you have a — somebody tries to prevent a general thing. We normally say he also prevent — tries to prevent those things that are specific that fall within the general term, but not every oddball example. Exactly. And what you want is something that rules out the oddball examples. And your words are reasonable likelihood, and you'll say if it's an oddball example, you can't hold him guilty of that if it turns out that in this case the Federal thing is an oddball example. My question really is to you, if you win on that, then are you going to go back and argue there was not one piece of evidence whatsoever that there was any reasonable likelihood that the Feds would investigate your case? We would argue that there is — the record is insufficient to establish reasonable likelihood of Federal involvement. And I can't put any better than that. Thank you, Justice Breyer. Thank you, Mr. Chief Justice. Thank you, counsel. The case is submitted.